Good morning, Your Honor. My name is Duke Nari and I represent the petitioner Vicente Aleman-Medrano. The petitioner is convinced that the Board of Immigration Appeals erred in this case because it did not consider sufficient weight to sum up the very important facts in the petitioner's case. And the fact, the central fact in this case is the daughter, the petitioner's daughter, was the entire reason for the case. The entire reason. When he received a call on October 9th of 2015 to go get his daughter from the police station, he was asked to file a police report. He was told if you don't file a police report, we're not going to let your daughter go. And that is the reason why the whole case started. And when he filed that police report, his life became hell. Then he was subsequently threatened, and he was threatened again. And it's because of that they were here today. And so it's so important that in that respectful submission, the argument the appellee is making in their brief, which is the objective record. They're focusing, mailing sometimes on the indictment document. But the reason why we're here is because of the daughter. It's because of the daughter. And therefore, the Board of Applicants for Asylum need not show conclusively why persecution occurred in the past or likely to occur in the future. Council, it seems to me the critical issue here is whether there was persecution. And there clearly was no persecution on the part of the state. This is a question of interaction of private actors. The state is not involved. The state is not involved in any persecution. And when you're talking about private actors, you're talking about the question of whether the authorities in El Salvador were unable or unwilling to protect the petitioner. And in a private case, as opposed to a state persecution case, that becomes the question. And then it becomes a question of whether there was evidence to support the BIA's decision and whether it could have reached, or any reasonable fact finder could have reached the decision that it did. And I think we'd all be happy to hear from you on that point. There's ample evidence in this case to show that a government of El Salvador was completely unable, unwilling to control the private actor, the MS-13 case. And I'll tell you why. When for all, if you look at the transcript, if you look at what happened, first of all, this is an application indictment. This is what this case is about. This was not a trial at all. So in the application for indictment, we have the police report filed by the petitioner. We have the police report filed by the police. And you have the psychological report in this case. With all that, they were unable to indict the persecutors in this case. And to dismiss the case, and in the dismissal document, if you look at the application for indictment document, there's not a single mention by it. You see? The council, our previous precedence is a difference between ineffectiveness and unwilling or unableness. I mean, there's a lot of crime in the United States. And we are ineffective at reducing it or mitigating it to the degree that we would like. And so, if you put that to one side, where is the unwillingness or inability found? Because after the complaint was filed against Mr. Segaran, the gang member was arrested. An investigation was conducted. A search was conducted. Mr. Segaran was arrested and detained for six months. And he was only released when Mr. Elman failed to show up in court to cooperate with the proposed prosecution. And even the fact of release was pursuant to a thorough and well-considered judicial decision. And I'm wondering, given this evidence, how that shows that the fact finder or the DIA reached a decision that no reasonable decision maker could possibly have reached. That's the ineffectiveness of the police. And that alone can be a basis for finding government acquiescence. It should be sufficient by itself. So, the proposition was... Well, but I thought our precedence says that ineffectiveness is not the legal standard because there are all kinds of governments that try hard but still may be ineffective. And we have distinguished ineffectiveness from unwillingness or unableness. But in this case, in this case, there was a completely breach of the government duty because the petitioner, when the petitioner went to the police, first of all, it was the prosecutor. No way in this case. He didn't spend six months in prison. He spent four months and six days in pre-detention. He was never in prison. So, he was a pre-detention, first of all. And after that, the reason he was... Because the family was being threatened by the police. The petitioner went to the police station. If you look at page 102 of the joint index, he went to the police and told the police the reason they are threatening me. They're telling me if I testify, they will kill me. And you know what the police officer said? Look at page 102 of the joint index. The police officer told him, just don't show up. So, there's a lot packed in this case here. There are things that the immigration judge did and did not do because it didn't need to do the matter in which it proceeded. Persecution, past persecution, really wasn't one of the grounds. It really turned upon the consideration that the court and the BIA and immigration judge turned upon the fact that they believe that the MS-3 matter was motivated by vengeance and retribution for not coming to testify. And yet, the question here is one in which whether there's a familial relationship, it doesn't have to be the only evidence of it. And you could concede everything that they found here, at least below. But at the same time, the question is whether or not there was a familial relationship. And what you seem to be turning upon is, it has to be intertwined. He didn't just go down there to confront this particular fellow at the police station for nothing. He went for his daughter. And then when the daughter was being stressed, even for the five days, it wasn't because they didn't like him. It was because of the daughter. And when you look at what the police did, the police didn't try to protect him. They protected the daughter from rape. They didn't. They told him, says, well, if you want to, you've got to testify about his complaint against this MS-13 gang member. Now, it's only common sense that when you do that, you're going to have a problem. They weren't trying to protect him. And then even after he got his daughter back and the gang member comes to the house, and then the gang member again threatens him, or the police response, even at that point was, well, if you, you know, at that point and before it was, well, if you want to protect it, then just don't show up. And the reason he didn't show up is because the government basically told him, if you don't want your face facing these death threats, and if you want to do something about it, then you do it. Just don't show up at the trial and don't testify against them. Then it will go away. But they're not going to drop these charges. They wouldn't let him drop the charges or do anything. So the bottom line is when we analyze this case right here, it is, I mean, we can accept everything in the light they want to say, say, well, there's a motivation of vengeance and retribution for not for filing a criminal complaint. All that can be true. But the question before us is whether there was, we can say that at least one of the factors here was a familiar relationship. It's very difficult not to determine that there's a familiar relationship here. And even when we get into the business of withholding or the settlement, and the question being whether the police have done anything, they've done nothing in this record to protect this individual. They've done something to protect the daughter by putting her, prosecuting the offending fellow here, the MS3 gang leader. And they consistently have been doing that. But what they've not done is anything to help this man here. If anything, they've done the opposite, to require him, first of all, to file a criminal complaint against those individuals that he already knows are going to come after. And they, in fact, do. And when they do come against him and he goes back and he says, I want to withdraw, I said, no, we're not going to let you withdraw. Just don't show up. They told him that. So when he doesn't show up, that's when he gets in a big problem. All this relates very directly with the fact that he has a daughter. And that is the familiar relationship that at least appears to be one of the considerations. And Perez makes that clear. That doesn't need to be the whole case. This is not a weigh-in situation. It's a question of whether or not that's one of them. And how do you address that, at least from that perspective of this case? And that's exactly right, Your Honor. That's our main argument. We agree that vengeance and but the nexus, the definition of nexus is one central reason for the persecution. And that's the issue before us is nexus. That's the key. And I think that's when we differentiate, that's the issue before us because below, they didn't really address the persecution point there. So it being the nexus here, and when we look at it, and if we go into what we've talked extensively about the police want to protect him, they weren't protecting him. I don't see anything in this record that shows they're protecting him. That you may could come out and say they're protecting the daughter from this raping that's occurred by this bandit. But I don't see anything here that say they are protecting him beforehand to require him to even get his daughter back. If his daughter is a victim, why does he have to file a complaint to get his daughter back? He wants to get his daughter back. So he does file this complaint. And you know what the outcome, it is predictably exactly what happens. The members show up for five days threatening he and his family to the point they cajole him to say, you gotta go down and withdraw this thing. He doesn't. I mean, it's an act of desperation. He goes down and tells him, I gotta withdraw, it's gonna kill us, it's gonna kill me and my daughter if we don't do this. And their response is, just don't show up. Not that we're gonna help you, just don't show up. And you know the end result of not showing up is exactly what happens in this instance. Ultimately, he's released from it. When he's released, he goes right back to the same place and says, give me back that daughter, the one that I was raping who's only 12 years old. There, that's something that I don't think the court adequately addressed this below, but I could be wrong. And I'd like to hear from the other side too when it comes up as to how that is not at least a factor when we look at the familiar relationship of why these things happen. It's his daughter. That's the key. It's his daughter. They didn't even care about this man one way or the other from what I can see, it's all his daughter. I had two questions with respect to that. When they arrest the gang member against whom the complaint is about, isn't that protecting everyone, both the father and the daughter? And second of all, before you even get to the question of a prohibited ground and a nexus, you have to ask the question, the antecedent question of whether there was persecution in the first place. The antecedent question is whether there was persecution. And then you get to the question of nexus and the question of whether persecution was on account of a prohibited ground. But until you get to the point of persecution, you don't reach these other prohibited ground questions. And given all the evidence that the government made in this case, how do we get to the point that either, how do we get to the point that this persecution here on inability and unwillingness to protect somebody when they actually arrest the person against whom the complaint is filed? That's trying, if you arrest the person against whom the complaint was filed, then you're trying to protect not only the daughter, but the person that filed a complaint, which is Mr. Ayala. And here, the efforts that the Salvadoran government made were extensive. And if this does not suffice as a reasonable decision, I can't imagine any case in which we would find that it was able, which we would find anything other than an unwillingness to protect. And the implications of the petitioner's view, it seems to me, are to fling the doors just way wide open. And I don't even see how we get beyond the question of persecution when the individual who filed a complaint is arrested by the government, detained by the government. His search was conducted by the government. How can that be an unreasonable finding of fact on the part of the decision maker? There's an antecedent question before you even get the nexus. And if you do get the nexus, arresting the person and detaining the person and wanting to try the person against who the plaintiff filed, that can't be the nexus. Your Honor, first of all, persecution is not in this case. The immigration found persecution in this case. The BIA found persecution in this case. Counsel, sorry, it's Judge Harris. So the BIA says specifically, first, they think there was no nexus. They say that. And I'm just assuming for purposes of argument now, that's wrong. But they do go on. The BIA says specifically, and in the alternative, that they also haven't established that the authorities were unable or unwilling to protect them, given that the gang member who is the source of these threats was arrested, investigated, detained for six months. The respondent doesn't challenge any of these So I understand what you're saying about they accepted some parts of the persecution showing, but they definitely did not accept the unwilling and unable to protect part. The BIA specifically said that showing hadn't been made here. So that has to be wrong for you to prevail, right? We have to be able to say that that finding is not supported by substantial evidence. That is correct. That is our argument. It's not supported by substantial evidence, Your Honor. Did you make that argument in your brief? And I don't mean to be all picky, but I didn't even see that argument in your brief. We did. We did address the unable and unwillingness in our brief. We did. We did. Yes, we did. Because that's the whole point. We believe that the government, yes, he was, first of all, Noe was not the subject of the investigation. His brother was. They were looking for his brother when they fell upon him. That's exactly what happened in this situation. And when that happened again, he was arrested temporarily again for four months and six days. And he was in pretrial detention. So he was actually never prosecuted for the crime of sexual abuse of a minor. Never. Well, I want to ask one question before we move on, and that is, I think we need to be clear. The BIA said that neither your client, Madrando, or the daughter established that the government was willing to help. But if you look at that IJ finding, that finding was never made as to Madrando. It was only made as to the daughter. And that's what's in the record. It's right there in the record that the finding on the record is only regarding the daughter. And I would ask you to look at that, because I think that's material here. It is, and maybe determinative. I like to hear the government's counsel deal with it. When you look at the record, pages 57 and 58, when you're looking at the IJ's finding, that's all he makes this finding on, is the daughter. He does not talk about this defendant. But then the BIA somehow brings it out of the whole cloth and includes him in it. It's not there. So I think that's a focal point that needs to be made. I agree on that. I'm out of time. All right. We thank you very much, sir. You've reserved time for rebuttal, and we'd be happy to hear from you at that point. In the meantime, let's hear from Ms. O'Donnell. Thank you, Your Honor. Good morning. May it please the Court, Margaret O'Donnell for the United States. Ms. O'Donnell, would you address that point I just made at the end, and that is that insofar as the government's willingness to help or not help, the immigration judge only made that finding as to the daughter and not as to the defendant. And if you maintain otherwise, please tell me in the record where he did that. I'm in the record right now, because this was a new issue for me when you raised it. Well, it's at the heart of what's going on. If he didn't make a finding here, and we'll say he did, and the BIA makes this finding, but there's nothing for the IJ. It's on pages 57, 58 in the record there. And he only makes it as to the daughter. He does not make it as to the petitioner here. Okay. Ms. O'Donnell. I'm sorry, Your Honor. I was trying to read where that is. I'm on page 57. Well, let me just ask. Let me just ask. Judge Wayne is right. I haven't encountered this, or it didn't come to my mind when I was writing my brief. I apologize. But everything we're doing is on the finding. Whether you found it in your brief or not, it's right there in the record. And if he didn't make a finding insofar as defendant, and it's only as to the daughter, how in the world we're now going to rely upon a finding that does not exist? Ms. O'Donnell. Counsel, can I layer onto that, that I would be open to the idea maybe that, well, the BIA made an independent finding based on this evidence that the respondent didn't challenge, but the BIA does its holding here as agreeing. It says agreeing twice. And it is correct that they're not agreeing with anything because the IJ didn't make this finding. So do we need to send this back, get that squared away? Ms. O'Donnell. I don't know, Your Honor. I really don't. I think there's sufficient other arguments in here regarding nexus, et cetera, that may make that not necessary. All right. But just assume for a minute that I think there is a nexus here under Cruz. And for all the reasons Judge Wynn has been suggesting, just hypothetically, if I thought that, and so the only ground on which I could affirm would be this unwillingness to control or unwilling or unable to protect. And that it's only made to the one. Yeah. And I am quite convinced that the IJ only made that finding as to one. The BIA, it's a little ambiguous to me what the BIA thinks it's doing, but it does appear to believe that it is affirming the factual finding of an IJ that doesn't exist. Right. So now what do I do? If that is your only issue, then I would say that you should remand it. Okay. Excuse me, Ms. O'Donnell. I don't know that I would concede at this time. Totally understand. I am not reading you as conceding any part of that hypothetical. Thank you. Ms. O'Donnell, why isn't the answer simply that you have a petitioner here who filed a complaint against a gang member and the gang member was thereafter arrested? And as I mentioned earlier, I'll repeat it because it's important, an investigation was conducted, a search was conducted. The man against whom the complaint was filed was arrested and detained for six months. And he was only released when he refused to cooperate with the prosecution. Now, how can that not be protecting him when the Salvadoran authorities arrest and search and prepare to prosecute the very person against whom he filed the complaint? That goes to protecting him. If you file a complaint against somebody, and the government takes action against the person you file a complaint about, how does that show unwillingness or unableness? Your Honor, I completely agree with you on this. And not only that, but the record from the court in El Salvador is so detailed. I was surprised at how detailed it was. But let me ask you, I want you to answer that question, but I want to do it in the context of what really happened. They didn't just go and arrest him and keep him there. They only did it after they insisted that he file a complaint. And his purpose of doing so was to get his daughter back. So then they go and get him. And then these gang members, which you would think just having him locked up is protecting, but this man is part of the MS-13 gang. That gang comes after them for five days. And whether he's in jail or not, he certainly has opportunities to be able to direct certain actions. And so he's there. This man is threatened for five days continuously. And to say it in a vacuum as though we're in the United States of America where a police goes in and sees someone raping a 12-year-old, you don't need someone to file a complaint to prosecute that person. A police can do that. We wouldn't even ask the father to come down and file a complaint on it to do it, because they saw this man raping a minor. And they arrested him for it. But they could arrest him, and he could be prosecuted on that alone. But they insisted the father do it. So then the father gets his daughter back. He's then threatened. And that's the prosecution if you want it. Threatened to kill is real prosecution. They threatened to kill him. And as a result that he goes back, he tries to withdraw it. They won't let him do it. They're not trying to protect him. He's coming down to protect himself and his family. They're not going to let him withdraw it. So then here's the part that I don't believe in the United States of America. Anybody would say this is OK. But if you leave this fact out, you wouldn't know it. They tell them don't show up. That's what you do. Now, when the government tells you don't show up, that's the way you can protect yourself. That's not the government protecting you. And it has to be imaginative to even think they are protecting this man here. They are not protecting. That's what IJ made the finding. But now on the appellate level, even if we wanted to make the finding,  and leave out those additional things, they made him file that complaint to get his daughter back. They did absolutely nothing when he tried to withdraw it and told him instead, affirmatively, don't show up. And we then now say, well, they are protecting him. But the IJ never made such a finding. That's the reason he never made it. He knows it didn't happen. If they're doing anything, maybe they're protecting their daughter. And that's another case. But that's not the case here. So, Donald, it's a perfectly reasonable step to ask someone to file a complaint. You don't want in certain situations of police to be running around over the country and just arresting people and prosecuting people without any sort of basis. There are all kinds of situations in which domestic abuse is one. You don't issue restraining orders against the abuser unless a complaint is filed. There is simply no, nothing irregular or wrong about asking someone to file a complaint and for the police to have some grounds to withstand a legal challenge on which they arrested somebody. We don't want police in any country taking groundless actions. And that's so filing, filing a complaint was quite a reasonable step for any judicial process to insist upon. I want you to answer that, but I want to at least make sure we do it in this vacuum. That is, first of all, this is not them asking him to file a complaint. They said he wouldn't get his daughter back unless he did. And then the second point is, you don't have to run around the country. They walked in and saw this man raping the daughter. This is not an instance where there's accusations all over the place that he's raping a daughter. They saw him raping. They saw the crime. The police are the witnesses to the very crime here. So this business of they asked him to file a complaint, that's not exactly what the record says. They, he came to get his daughter. They says, you won't get your daughter unless you file this complaint. That's a different situation than where you have someone who's been raped. And then you go and say, well, here's your daughter. And now we want you to file a complaint. Totally different. I see your point. But I feel Judge Wilkinson's point is stronger. One, we don't know what the laws are in El Salvador. But if I am a police officer with a 13-year-old child that was being raped and some man showed up to pick her up claiming she was his daughter, I'd want to know that he was invested. Because this young lady went to live with that young man in his parents' home for 10 or 14 days prior to the arrest. I'm sorry, is the government's position that when parents come to prisons or jails, I guess, to pick up their children who have been victims of violent crimes before they get them back, the jail officials are going to run a check on how invested they are as parents? I don't understand what you're saying. That's not my point. My point is, when this little girl disappeared from her home 10 or 14 days prior, depending on the dates, there is no testimony of any effort to bring that child back home prior. So that is what you're saying. This father shouldn't have gotten his daughter back because he was not doing well. No, I'm not making that conclusion. There's just no evidence that he did. How is this even a question, though? There's no evidence that he did anything. Why should there have to be evidence? There's no evidence that he did anything. Evidence of him trying to get the daughter back? In other words, he's never imposed himself in any way as an obstruction to that relationship as far as we know from the record. So it's not until he writes that complaint, when he completes that complaint, that is when the gang focuses on him. I think I see what you're saying, counsel, but I don't see how that helps you at all on the nexus inquiry. Because now you're saying before he can get his daughter back, he has to really prove up this is an important relationship to him. He's trying to protect that girl. That's exactly what you're saying. There's nothing in the record about El Salvadoran law. We don't know whether or not, can a police officer allow someone to withdraw a complaint? I don't know. I'm not an expert in that area. Well, do we know enough about the law that if the record shows the Salvadoran government said they caught him indelicto flagrante, they caught them in the act? They saw him. And we don't know enough, I don't know a country on planet Earth that if the authorities catch you in the act, if you were shooting someone and murdering someone, why do you have to go to the victim's family to get a complaint? If you're raping a minor child and in front of the police and the government, indelicto flagrante, what in the world says you got to have the police, the father, to file a complaint under any law on planet Earth? I don't know, Your Honor. I don't know, but the father did file a complaint, and then he chose not to attend the hearing. Not just him, the entire family did not intend, including, now, keep in mind, the girl also filed a complaint, but she was not threatened, thankfully. But the entire family did not show for that hearing. The investigation- Weren't they told that was the way in which they could essentially avoid being killed? Avoid the threats from the gangs, yes. The way you can not get killed is don't come to the trial. And you put it in a language of they chose. Who chose this? In other words, they chose life over death by not going to the trial. I don't understand your point. How much of this was brought up before the fact finder? It seems to me we're sort of weaving a narrative of our own up here. But, you know, the IJ, the PIA has been charged with the Attorney General of enforcing this statute, and the IJ has been charged with hearing the facts on this. What I hear is an appellate narrative that is making suppositions and substituting us as a finder of fact. Let's go back to the record, then, and to the finding where the ILJ did make the finding. If you don't want to weave some facts, don't weave that fact. He did make a finding that this fellow had from the perspective of the judge. So there we are. So, Donald, do you have something you'd wish to say? I just I I don't even know how to respond to that. They are what you how you respond to it is by saying that in the steps that they took to prosecute Mr. Segaran, that they are trying to remove the problem root and branch. That they're trying to take care of the entire problem, which will resolve, which will both protect the daughter and will protect Mr. Elmer. Now, how that could possibly qualify as persecution. The asylum statutes were primarily directed at state persecution. We don't have that here. No state persecution. Any persecution must come through inability or unwillingness, and that's different from arresting one who is the source of the problem and are bent on on prosecuting him according to their normal procedural principle. How does that translate into an unwillingness or an inability to protect anyone when if Mr. Segaran is detained and convicted, he's detained substantially before the trial, there's a good chance with Mr. Elman's cooperation that he would be convicted. And that would remove the source of the problem. Not only the daughter, but Mr. Elman himself. That doesn't translate into inability or unwillingness. I agree 100%. And you should agree, because that makes that's a good argument. But none of that is in the findings insofar as what's here. If you want to speak of weaving some facts, that's weaving facts that have not been made here. Do you maintain that there's a direct findings insofar as persecution in this case? Yes, and not only that, but the record has the court's translation as to what they did, the forensic evidence they did on her, the medical evidence they performed on the young lady. Ms. O'Donnell, the record contains all of this. We don't need to embellish the record or create. Record contains that this individual, this gang member was arrested, that he was investigated, that the search was conducted, that there was detention, that the police refused to, didn't want to dismiss the complaint because they wanted to prosecute. And the case was actually set up with a court date. And unfortunately, Mr. Elman did decline to appear. But all of the steps they took are in the record. And just apply some common sense. There is absolutely no evidence that can read, no reason that can be gleaned from all these steps that Salvadoran authorities were unwilling or unable to protect this person. They didn't just let him go. They didn't just turn their back. They didn't just turn a blind eye. That's right. They went after him. Why did they go after him? For the rape of a minor. And once they got him, and did they not personally witness that rape? Yes. Did they need to go after, do they need this complaint to be able to arrest this By the way, when did they arrest him? That night. Was it the 4th of October? Did they arrest him after they saw him in this act? They took him into custody then? They took the two of them into custody. Yes. So did they have him in custody when the father came to get his daughter? I assume they did. What do you mean you assume they did? You think they let him go? No, I don't think they let him go. There's nothing. I thought you just told me they took him into custody along with the daughter. You think they would keep the daughter and let him go? I'm sorry. I don't even understand that. No. Let's not confuse ourselves. And I want to make sure we step back so I don't understand. We get the facts right. They go in and they just, of course, they're there for something else. And they discover this individual, this gang member in the act of raping this minor child. And you say they took both of them into custody. Is that right? They took them both down to the station and into custody. So they have him in custody for raping this minor child. And then the father comes to get his daughter. He comes. He's not coming about the rape. He's coming to get his daughter who's being held by the police. And they won't let him take her until he files the complaint. That correct? That's my understanding of the record. Yes. Where does he need protection from someone they already have in custody? And they have already witnessed has raped this man's daughter. What is the protection? And have they heard any threats against him? Or are they doing anything to protect him? By him, you mean the petitioner? I'm just wondering. Yes. Okay. At this point, why does he need protection? The young man is locked up. And as long as the young man stays locked up, everything's fine. Until he's approached by the leader of the gang. Who doesn't technically, according to his own testimony, didn't make a death threat. But just that it would be to your detriment. That was the translation. So yes, the finding of persecution, based on the death threat, is an understanding of it. But I don't understand the issue of protection. The young man is locked up. It's only when the young man is provisionally acquitted and released, that he returns to Aliman's home to seek out the daughter. But I... All right. Thank you. Thank you, Melissa. Thank you. Mr. Kanari, we'd be pleased to hear from you in Roboto. Yes. Your Honor, what I want to make it clear is, the source of the problem is not only nobody. The source of the problem here is MS-13 in general, and nowhere. That's the point. MS-13 is bigger than nowhere. So when you say protection, and the steps that the courts have taken, it's just not sufficient. Because when the petitioner went to the police and told police the threat he was facing, it was not from nowhere. It's from the other MS-13 members. And the police knew about that, and did not provide any protection about it. And instead told him, don't show up. Don't show up. You said a minute ago that he declined, the family declined to participate. They didn't decline to participate. It was not their choice. They were threatened not to participate. First, after... First of all, after he filed the police report, these people were in front of his house for five days straight, brandishing arms and weapons at him, and every turn going to work and coming back. He was being threatened. And they were telling him, if you and your daughter do not go and take the police report back, you will suffer dire consequences. That is the translation. So the police knew about it, but no protection was provided. So nowhere only being in detention does not provide... I can't hear you at this point, Mr. Kanari. Neither can I. Oh, I'm sorry. I'm sorry. Can you hear me now? Okay, yes. Mr. Kanari, what do you do with the fact that the police actually killed El Prisonero, and he was the first gang member to threaten Mr. Elman, and as I understand it, the police killed him. That would seem to me to indicate a willingness to protect Mr. Elman when the first person who threatened him, the first gang member who threatened him, was killed by the police. How do you deal with that fact? Very good, Your Honor. Where a government contains official that will be complicit in torture, and that government on the whole is admittedly incapable of actually preventing that torture. The fact is that... I'm talking about Mr. El Prisonero. Right. But... And the fact that he had threatened Mr. Elman, and he was killed. That is correct. He was killed, but what happened after he was killed? Nowhere became his replacement. Nowhere became... No, but he was the very first one to threaten Mr. Elman, and your position is that there was an unwillingness to protect him, despite the fact that they actually killed the first person who threatened him. How does that translate into unwillingness or inability? But his killing has nothing to do with the persecution of the petitioner, and that happened when he was on his way to the United States. That was related. We don't know what happened in that meeting as to what happened. We have no clue. We know it happened, but it's completely unrelated to the petitioner's case. And when after that happened, no way, the main persecutor, the main person became his replacement and became the gang leader at that point. So there's no protection for the respondent, for the petitioner at all, none whatsoever. And you know there's no protection for the petitioner because they had to move from Usulutan to La Union, and still they were not safe. That is the whole reason why they had to come to the United States, because if they were safe, Judge Wilkinson, they wouldn't be coming to the United States. Nobody would leave their homeland just for the hell of it. If they were protected, they would not have left their country. And you did not need the cooperation of the petitioner. You don't need the cooperation of the petitioner's wife at all. You don't need it because you have enough. You have the police car, you have the complaint filed by the petitioner, you have the psychological report, but you understand the indictment was dismissed. How can that be? An indictment against this person, given all the evidence you just cited. It's impossible. You can't, you cannot protect the petitioner with the indictment, with all the facts you cited, Your Honor. You can't. I'm out of time, Your Honor. Well, you said that, I thought Mr. Elman acknowledged that had he appeared in court, Mr. Segaran would not have been released. But they don't need him. They did not need him at all. And they knew he was being threatened. They didn't need him. They have the police were the witnesses. They have the psychological report. They have the police report from the daughter. And the daughter told the police that she was assaulted by Noe. That is in the record. She was assaulted, not only raped, but she was assaulted. How can you dismiss that case? How can you say that the Salvadoran government is trying to protect the petitioner? It's impossible, Your Honor. They can't. They were unable and unwilling. Guess what? An applicant ability to file a police report may suggest that the police were willing to protect them, but it says little about their ability to do so. Completely different. Willingness and ability. It is about the success of the endeavor. It's not about what the laws are in the books. It's not about the lip syncing. It's not about the empty promises and empty token. It's what you actually do. This case should never have been dismissed against Noe. Never. In any country. Mr. Kanari, thank you very much for your argument, Ms. O'Donnell. Thank you very much for your argument, and I'm sorry that we are unable to come down and shake your hands, which is our traditional custom, but I hope the day will come when we are able to come down and greet and thank you in person.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Pamela A. Harris